613 A.2d 1178

Robert F. CROWELL, Administrator of the Estate of Marc Ethan Crowell, Deceased, and Robert F. Crowell and Linda Crowell as plaintiffs in their own right, Appellants,

v.

CITY OF PHILADELPHIA, Appellee,

and

Henry B. Lewis, Appellant,

and

Commonwealth of Pennsylvania, and Robert F. Crowell, Henry Lewis, Additional Defendant, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 3, 1991.

Decided June 17, 1992.

George F. Dale, Philadelphia, for appellants.

Richard J. Schubert, Pittsburgh, for amicus—Pa. Trial Lawyers Ass'n.

Joseph P. Lenahan, Scranton, for amicus—Pa. Defense Inst.

Nancy J. Gellman, Philadelphia, for amicus—Bell of Pa., et al.

John G. Shorall, II, Pittsburgh, for amicus—City of Pittsburgh.

Kenneth M. Jarin, Hugh J. Hutchison, Joseph C. Rudolf, Philadelphia, for amicus—Pa. League of Cities.

Mary Gay Scanlon, Lise Luborsky, Philadelphia, for appellant.

Lawrence L. Robinson, Philadelphia, for Robert F. Crowell, additional defendant.

Theodore J. Chylack, Sr. Deputy Atty. Gen., for amicus—Comm. Parties.

Daniel Sherzer, Deputy Atty. Gen., for Com.

Lawrence L. Robinson, Philadelphia, for Robert F. Crowell—additional defendant.

Charisse Lillie, City Sol., Alan C. Ostrow, Chief Asst. City Sol., for City of Philadelphia.

George F. Dale, Philadelphia, for Robert F. Crowell, et al.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

Appellants come to us by allowance from an order of the Commonwealth Court which, *inter alia*, entered judgments *non obstante veredicto*, in favor of the City of Philadelphia and against appellants, 131 Pa.Cmwlth. 418, 570 A.2d 626. The basis of the Commonwealth Court ruling was that the City was immune from suit under provisions of the Governmental Immunity Act,[1] 42 Pa.C.S. § 8541 *et seq.*

The germane facts of this case are uncontested. On May 17, 1981, Robert F. Crowell, his wife Linda Crowell, and their three year old son, Marc Ethan Crowell, were travelling in their car. They were proceeding west on University Avenue, which is located in the western section of Philadelphia. Henry Lewis was also travelling in his car, but he was proceeding east on University Avenue. The respective lanes were separated by a low rise concrete medial strip.

The two cars approached a curve in the road. The curve turned to the right for eastbound traffic and to the left for westbound traffic. Facing Mr. Lewis' vehicle was a large directional arrow directing traffic to turn left. Unfortunately, the directional arrow was wrongly placed, for the road turned to the right. Mr. Lewis nonetheless followed the arrow, thereby crossing into the Crowell's lane of traffic, striking their vehicle, and causing injuries which eventually resulted in the death of Marc Ethan Crowell.

The Crowells subsequently brought survival and wrongful death actions against Henry Lewis and the City of Philadelphia. The causes of action against Henry Lewis were ground-

1. Act of October 5, 1980, P.L. 693, No. 142 § 221(1).

ed in traditional tort law, whereas the causes of action against the City were brought under an exception to the Governmental Immunity Act, specifically the fourth exception which provides:

**Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency.

. . . .

(4) Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstance of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(4).

At the time of the accident Mr. Lewis was legally intoxicated and ultimately pled guilty to driving while intoxicated. Despite this evidence of intoxication, there was ample evidence, which was believed by the jury, that the incorrectly placed directional sign was a substantial factor in causing the accident. The jury, ruling on the parties' multiple counts, returned a verdict in the aggregate amount of $1,650,000.00 in favor of the Crowells and against Mr. Lewis and the City of Philadelphia. The jury apportioned the comparative negligence of the defendants thusly: Henry B. Lewis 80%, City of Philadelphia 20%.

Following post-trial motions the trial judge, the Honorable Paul Ribner, denied the respective defendants' motions for judgment *non obstante veredicto* and, after molding the verdict to reflect the limitation of the Governmental Immunity Act, and adding delay damages, entered judgment for plaintiffs as follows: 1) against the City and in favor of Robert and Linda Crowell—$202,594.50; 2) against the City and in favor

of the Estate of Marc Ethan Crowell—$311,655.50; 3) against Henry Lewis and in favor of Robert and Linda Crowell—$520,000.00; and 4) against Henry Lewis and in favor of the Estate of Marc Ethan Crowell—$800,000.00.

The defendants appealed these judgments and, as noted above, the Commonwealth Court reversed the judgments which had been entered against the City, and proceeded to enter judgment, *non obstante veredicto,* in favor of the City and against the Crowells.

Upon petition for review filed by the Crowells we granted allocatur, for the limited purpose of examining the Commonwealth Court's "interpretation of 42 Pa.C.S. § 8542(b)(4) in light of our decision in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987)." [2] For the reasons set forth below, we now reverse that part of the order of the Commonwealth Court which granted the City relief.

In *Mascaro* this Court examined whether liability attached to the City under the real estate exception [3] to the Governmental Immunity Act in a situation where the defect in the City's real estate facilitated the ultimate injuries but the injuries did not occur on or near the real estate. The facts of *Mascaro* were that the plaintiff's family had been grievously injured by a person who had escaped from the City's Youth Study Center, a correctional facility. The injuries to the plaintiff's family occurred well away from City owned property.

We concluded that the City could not be sued under the real estate exception and held:

**2.** *See* 525 Pa. 550, 551, 582 A.2d 1311 (1990).

**3.** 42 Pa.C.S. § 8542(b)(3). That section provides in relevant part:
  **(b) Acts which may impose liability.**
  —The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
  . . . .
  (3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

*Id.* 514 Pa. at 363, 523 A.2d at 1124 (emphasis in original). In support of this holding we further stated:

We believe the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties by its language in § 8541, *supra,* and that it has not seen fit to waive immunity for these actors in their acts in any of the eight exceptions.

*Id.* These latter comments were based on the Court's interpretation of section 8541 of the Immunity Act which provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof *or any other person.*

42 Pa.C.S. § 8541 (emphasis supplied in *Mascaro* but not in original statute).

In the present case the Commonwealth Court relied on the above quoted statutory language to conclude that the City cannot be liable for *any* injury caused jointly with another tortfeasor. This conclusion went far beyond that intended by *Mascaro.*

We begin our analysis by noting that the jury in this case found by its verdict that the City's action did not merely facilitate the injuries but was in fact a substantial contributing *cause* of them: the liability of the City here was found to be joint as opposed to merely vicarious.[4]

---

4. Unfortunately, the Commonwealth Court panel here did not draw a distinction between the type of analysis applicable to a vicarious liability situation, wherein the political subdivision because of its position is claimed to be negligent, as opposed to joint liability, wherein acts of the political subdivision which fall within the Act's exception are the basis of the liability claim. However, we do note that these issues were considered by the full Commonwealth Court in the case of *Buschman v. Druck,* 139 Pa.Cmwlth. 182, 590 A.2d 53 (1991).

Vicarious liability, sometimes referred to as imputed negligence, "means in its simplest form that, by reason of some

The facts of *Buschman* are similar to the present case in that the case arose from a two vehicle head-on collision. The drivers of the vehicles sued each other and the Commonwealth Department of Transportation (Department). As against the Department both drivers alleged that it "was negligent in failing to place curve warning and speed advisory signs at the curve where the accident occurred." *Id.* 139 Pa.Cmwlth. at 184, 590 A.2d at 54 (1991). The trial court granted the Department's motion for summary judgment on the basis that the Commonwealth Court's decision in *Crowell* precluded the respective causes of action against the Department. The drivers appealed this decision to the Commonwealth Court and that court reversed the order of the trial court by a 6 to 1 margin. Although six judges agreed to reverse the trial court order, and to overrule the Commonwealth Court's decision in the present matter, they did not agree on the legal theory upon which the reversal should rest, and furthermore did not agree on the status of the law to be applied to these cases.

The lead opinion, authored by Judge Palladino and joined in by President Judge Craig and Judge Kelley, espoused the position that the *Crowell* decision was correct as to its facts, but that the idea that *Crowell* abolished joint tortfeasor liability against governmental units was untenable. Therefore, the three judge plurality voted to "overrule *Crowell* in so far as it holds that a governmental unit can never be jointly liable with a non-governmental unit." *Id.* 139 Pa.Cmwlth. at 187, 590 A.2d at 56.

The Concurring Opinion of Judge Doyle, which was joined by Judge Pellegrini, agreed with that part of the lead opinion which opined that *Crowell* should be overruled to the extent suggested (which thereby gave the plurality a majority to effect the overruling of *Crowell* to the extent indicated). However, Judges Doyle and Pellegrini would have gone further than the plurality and would have overruled *Crowell* completely, reserving for future resolution the issue of what illegalities constitute superceding causes under this Court's decisions in *Chevalier v. City of Philadelphia*, 516 Pa. 316, 532 A.2d 411 (1987), and *Johnson v. SEPTA*, 516 Pa. 312, 532 A.2d 409 (1987). These concurring judges also would have interpreted the "any other person" language of 42 Pa.C.S. § 8541 as "addressing only considerations of vicarious liability." *Id.* 139 Pa.Cmwlth. at 192, 590 A.2d at 58.

Judge Kelley filed a short concurring opinion in which he agreed with overruling *Crowell*, to the extent that *Crowell* proscribed a finding of joint liability against "governmental instrumentalities."

Judge Byer also filed a concurring opinion, in which he took issue with the plurality's attempt to rescue the *Crowell* decision on "superseding cause" grounds, and expressed his opinion that *Crowell* was wrongly decided. Moreover, Judge Byer opined that the *Mascaro* analysis should not have been applied to other immunity exceptions beyond the real estate exception to which it was addressed.

Finally, Judge McGinley filed a dissenting opinion in which he embraced *Crowell* and would have decided *Buschman* consistent therewith. Judge McGinley also noted that the *Crowell* case explicitly refused to apply "intervening cause" analysis due to its interpretation of *Mascaro*, and therefore in his opinion the analysis of the lead opinion was groundless. *Id.* 139 Pa.Cmwlth. at 200, 590 A.2d at 62.

relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it." Prosser and Keeton on Torts (5th Ed.1984) § 69, p. 499. "The modern justification for vicarious liability is a rule of policy, a deliberate allocation of risk." *Id.* at p. 500.

Joint tortfeasor liability, on the other hand, arises when two or more persons acting together injure another. It is distinguished from vicarious liability in that liability attaches by virtue of the actions of each person as opposed to by operation of law. See Prosser and Keeton, *supra* § 52, p. 346.

In *Mamalis v. Atlas Van Lines Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989), we addressed the compensatory concept behind each theory of recovery, and adopted the following Superior Court explanation of the distinction:

> The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover.

> The system of contribution among joint tortfeasors, of which the Uniform Act's [5] apportionment rules are a key component, has arisen completely apart from the system of vicarious liability and indemnity and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the liability of a principal, the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's

5. Uniform Contribution Among Tortfeasors Act, Act of July 9, 1976 P.L. 586 No. 142 § 2, 42 Pa.C.S. § 8321 *et seq.*

injury) and divisible (since the conduct of at least one other also contributed to the injury).

*Id.* 522 Pa. at 220–221, 560 A.2d at 383, citing *Mamalis v. Atlas Van Lines, Inc., et al.,* 364 Pa.Super. 360, 365–366, 528 A.2d 198, 200–201 (1987).

■ Thus, succinctly stated, vicarious liability imposes liability on a person by virtue of his relation to the tortfeasor, whereas joint liability[6] is imposed on a person by virtue of actions taken in concert with another tortfeasor.

Turning this analysis to *Mascaro,* the Court in interpreting the language of section 8541 stated:

Acts of *others,* however are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees. This, of course, is a difference from the duties and liabilities of a private landowner who can be held accountable for the foreseeable criminal conduct of others under *Ford v. Jeffries,* [474 Pa. 588, 379 A.2d 111 (1977) ]

*Id.* 514 Pa. at 362, 523 A.2d at 1124 (emphasis in original).

The *Mascaro* Court then went on to note the consistent refusal of Pennsylvania Courts to allow a cause of action under the real estate exception against "those whose claims of negligence consists of a failure to supervise the conduct of students or persons adequately." *Id.*

The Court cited the following cases in support of its position: *Davies v. Barnes,* 94 Pa.Cmwlth. 145, 503 A.2d 93 (1986); *Messina v. Blairsville–Saltsburg School District,* 94 Pa. Cmwlth. 100, 503 A.2d 89 (1986); *Johnson v. City of Philadelphia,* 93 Pa.Cmwlth. 87, 500 A.2d 520 (1985); *Acker v. Span-*

6. We note that the phrase "joint liability" has been used somewhat generically to identify all situations where two or more defendants are liable to a plaintiff for a single injury. *See* generally Prosser and Keeton on Torts (5th Ed.1984) § 46, p. 322. This broader description subsumes the concept of vicarious liability. However, for purposes of this opinion we consider joint liability and vicarious liability as distinct concepts.

*gler*, 92 Pa.Cmwlth. 616, 500 A.2d 206 (1985); *Usher v. Upper St. Clair School District*, 87 Pa.Cmwlth. 461, 487 A.2d 1022 (1985); *Robson v. Penn Hills School District*, 63 Pa.Cmwlth. 250, 437 A.2d 1273 (1981); *Wimbish v. School District of Penn Hills*, 59 Pa.Cmwlth. 620, 430 A.2d 710 (1981). In each of these cases the plaintiff was attempting to bring the negligence of the governmental employee within the real estate exception; the courts refused because there was not shown to exist a causal connection between the injury and the real estate within the governmental unit's control.

The *Mascaro* Court used these cases to support its conclusion that "the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties." *Mascaro, supra*, 514 Pa. at 363, 523 A.2d at 1124.[7] Thus the Court's reliance in *Mascaro* upon section 8541 was a recognition that the statute precludes the imposition of liability upon a governmental unit based upon a theory of vicarious liability.[8]

In summary, the *Mascaro* decision was grounded in statutory interpretation, and was intended to be applied to like

7. The *Mascaro* Court arguably enunciated a second basis for its decision: "the Act ... excludes all criminal acts from liability including the acts of criminals such as [the perpetrator] who takes advantage of defects in municipal property to commit their own crimes." *Mascaro v. Youth Study Center*, 514 Pa. 351, 364, 523 A.2d 1118, 1124 (1987). Here again, however, it is important to note that the *Mascaro* Court arrived at this conclusion by utilizing statutory interpretation as opposed to the common law principles of superseding cause. *See* Concurring Opinion of Mr. Justice Hutchinson filed in *Mascaro, id.* 514 Pa. at 364, 523 A.2d at 1125.

8. Analogously, this Court in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990) made clear that the effect of the Sovereign Immunity Statute, 42 Pa.C.S. § 8521, *et seq.* was to preclude the imposition of liability on the Commonwealth based upon vicarious liability, holding:

[W]here there has been no negligent act by a Commonwealth party, there is no basis for applying any of the exceptions to sovereign immunity.

*Id.* 524 Pa. at 8, 568 A.2d at 935. *See Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), wherein this Court indicated that the two statutes dealing with immunities are to be interpreted consistently. *Id.* 522 Pa. at 435 fn. 7, 562 A.2d at 312 fn. 7.

situated cases.[9] The Court's holding is embodied in the following sentence:

"[We] hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the scope of liability."

*Mascaro, id.* 514 Pa. at 363, 523 A.2d 1118.

The question which remains is the theoretical framework from which to analyze those situations which will fall within the exceptions and those which will not. In this regard, Judge Byer in his concurring opinion in *Buschman v. Druck,* supra, 139 Pa.Cmwlth. at 198 fn. 12, 590 A.2d at 61 (1991), astutely recognized that this Court's decision in *Builders Supply v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951), can be helpful.

The Court in *Builders Supply, per* then Justice, later Chief Justice Horace Stern, explained the situations in which a right of indemnification would accrue, to wit:

The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is

---

**9.** The *Mascaro* Court addressed only one exception to governmental immunity. However, in *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987), we applied *Mascaro* to a claim brought under the "trees, traffic controls and street lighting" exception a/k/a the fourth exception, which is the one at issue in the present case. Thus, it is proper to apply the *Mascaro* analysis to the case at hand.

In *Chevalier* the plaintiffs brought suit against the City to recover for injuries received by them when they were assaulted in a City owned parking lot. Their theory was that the lot was inadequately lit, which thereby created a dangerous condition. We held that under *Mascaro* an injured person could not pursue a claim against the city because "harm caused by third persons may not be *imputed* to a local agency or its employees." *Id.* 516 Pa. at 319, 532 A.2d at 413. (emphasis supplied). As in *Mascaro* we emphasized that a fundamental principle governing the immunity exceptions was the elimination of the imputation of negligence back through a non-governmental actor to the governmental unit.

only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of *comparative negligence,* ... [I]t depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.

. . . . .

[I]t is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important part to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; *in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.* The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

*Id.* 366 Pa. at 325–328, 77 A.2d at 370–71 (emphasis in original).

■ Consequently, as applied to cases where a plaintiff is injured and brings an action against a governmental unit, the governmental unit can be subjected to liability despite the presence of an additional tortfeasor if the governmental unit's actions would be sufficient to preclude it from obtaining

indemnity from another for injuries rendered to a third person. *Cf. Sirianni v. Nugent,* 509 Pa. 564, 506 A.2d 868 (1986) (indemnification claim denied on grounds that City was joint tortfeasor). This assumes, of course, that the specific facts fall squarely within one of the exceptions. Alternatively, if the claim against the governmental unit is dependent merely upon the unit's status, as opposed to the action fitting within one of the statutory exceptions, then the language of § 8541 would preclude the imposition of liability.[10]

▇▇▇▇ Turning back to the facts of this case, the jury here found unequivocally that the actions of the City's employee were a substantial contributing cause of the action. Thus, since the basis of the jury's verdict was the active negligence of the City's employee misplacing the directional sign,[11] and not merely the City's status along the chain of causation, the verdict against the City was proper, and this Court's decision in *Mascaro* is not a basis for the City's assertion of immunity.[12]

10. An example of a case where a Mascaro analysis would be proper can be seen in the case of *Maloney v. City of Philadelphia,* 111 Pa.Cmwlth. 634, 535 A.2d 209 (1987). There an injured person sought to sue the city for injuries he received when scaffolding around a city owned property collapsed. The cause of the collapse was the unsafe manner in which the independent contractor constructed the scaffold. The Commonwealth Court refused to permit the suit against the City, reasoning that plaintiff's action was based primarily on the failure of the city to supervise and inspect the acts of another, rather than any actions described within the exceptions to the immunity statute. Because the City's purported liability was merely derivative of the contractor's negligence, it was held that the City was protected by the "any other person" language of § 8541.

11. We recognize that the attachment of liability to an employer based on the action of his employee, commonly referred to as *respondent superior,* involves the imputation of negligence from the employee/servant to the employer/master. However, in this category of cases, involving the liability of governmental units, the governmental unit can only act through its employees. Moreover, the General Assembly has legislatively declared the identity of employers to their employees when said employees are acting within the scope of their employment. Thus, the relationship is not a classic common law master/servant relationship and there need not be an imputation of negligence for liability to be imposed.

12. The City contends that the drunk driving conviction of Mr. Lewis should also insulate it from liability on grounds that his conduct

Accordingly, the order of the Commonwealth Court is reversed and this case is remanded to the Court of Common Pleas of Philadelphia for proceedings consistent with this opinion.

LARSEN, J., joins in this Opinion and files a Concurring Opinion.

CAPPY, J., concurs in the result.

LARSEN, Justice.

I join in the majority opinion which reverses the order of the Commonwealth Court and sustains the liability of the City of Philadelphia for injuries and damages suffered by the appellants as was found by a jury. I write separately to reiterate that I remain convinced that the Political Subdivisions Tort Claims Act (42 Pa.C.S. § 8541, et seq.) violates the Constitution of Pennsylvania in denying and/or limiting the recovery of damages, justice and the right of remedy to those injured by the negligence of local agencies and municipalities. *See e.g. Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) (Larsen, J. dissenting); *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306 (1986) (Larsen, J. dissenting); *James v. SEPTA*, 505 Pa. 137, 477 A.2d 1302 (1984) (Larsen, J. dissenting); *Carroll v. County of York*, 496 Pa. 363, 437 A.2d 394 (1981) (Larsen, J. dissenting). Additionally, although the majority opinion in *Mascaro* necessitates the analysis in the instant case, I remain of the belief that *Mascaro* was wrongly decided and that the real estate exception (§ 8542(b)(3)) should have been construed to permit recovery to the injured plaintiffs in *Mascaro*. As I stated in *Mayle v.*

constituted superseding criminal conduct. Defendant Lewis' actions were not only foreseeable, there was no evidence of record that his intoxication caused him to react differently than would have another driver who came across the wrongly placed directional sign. *See* Byer, J., Concurring Opinion *Buschman v. Druck*, 139 Pa.Cmwlth. 182, 193, 590 A.2d 53 (1991), and *Thornton v. Weaber*, 380 Pa. 590, 595, 112 A.2d 344, 347 (1955). Thus, defendant Lewis' drunk driving is not dispositive of the issue of the City's liability, as defendant's driving did not rise to the level of a superseding cause. *See Vattimo v. Lower Bucks Hospital*, 502 Pa. 241, 253 fn. 4, 465 A.2d 1231, 1237, fn. 4 (1983) Opinion in Support of Affirmance, Flaherty, J.

*Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) and restated in *Mascaro,* "I can think of no greater function or more honorable pursuit than for the [government] to care for those whom it has injured or maimed." *Mayle,* 479 Pa. at 407, 388 A.2d at 720; *Mascaro,* 514 Pa. at 370–71, 523 A.2d at 1128.