Andrew **MATUSOW** and Sharon Matusow, Appellants,

v.

Marvin **ZIEGER** and Karen and Gerald Luff and Commonwealth of Pennsylvania, Department of Transportation.

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1997.
Decided Nov. 10, 1997.

Natale F. Carabello, Jr., Philadelphia, for appellants.

John P. Capuzzi, Senior Deputy Atty. Gen., Norristown, for appellee, Commonwealth, DOT.

Marcy Coyne Pugh, Norristown, for appellee, Marvin Zeiger.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Andrew and Sharon Matusow (Plaintiffs) appeal from an order of the Court of Common Pleas of Montgomery County (trial court) terminating their case pursuant to Pa. R.J.A. No.1901 (Rule 1901) and Montgomery County Local Rule 406 (Local Rule 406) for lack of docket activity.

The Plaintiffs were passengers in a vehicle driven by Defendant Marvin Zieger traveling on a state highway when their vehicle hit a patch of ice and skidded into the oncoming car owned by Defendant Karen Luff and driven by Defendant Gerald Luff. On March 18, 1982, the Plaintiffs filed a complaint against Zieger and the Luffs for negligently operating their vehicles, as well as against Defendant Pennsylvania Department of Transportation (The Department) for negligently maintaining its highway.

Because no docket activity occurred between August of 1986 and August of 1988, pursuant to Local Rule 406,[1] on March 15,

---

1. Rule 406 provides:

The Prothonotary shall annually prepare a list of all civil cases commenced in which no activity appears on the docket for two years or more immediately prior thereto. He shall give notice thereof to counsel of record and to the parties for whom no appearance has been en-

tered that said cases shall be marked terminated on the docket unless an Activity Status Certificate is filed within (30) days after service of the said notice by mail, in person or by publication on counsel of record and to those parties for whom no appearance has been entered. Said cases *shall be marked terminated*

1988, the Prothonotary of the Court of Common Pleas of Montgomery County sent to Plaintiffs' counsel a notice of intent to terminate the action for lack of docket activity. In response, the Plaintiffs filed a timely Activity Status Certificate and the case was not terminated. Counsel for the Plaintiffs then certified the case ready for trial and it was placed on the April 11, 1990 trial list.

Because of this court's then recent decision in *Crowell v. City of Philadelphia,* 131 Pa. Cmwlth. 418, 570 A.2d 626 (1990), *reversed,* 531 Pa. 400, 613 A.2d 1178 (1992),[2] the Department filed a motion for summary judgment contending that it could not be liable when a joint tortfeasor was involved, i.e., the other Defendants, in this case. Because a petition for allowance of appeal had been granted, the trial court, by order dated June 20, 1990, with the agreement of the parties, removed the case from the trial list and deferred the summary judgment motion until our Supreme Court decided *Crowell.* On June 17, 1992, the Supreme Court subsequently rendered its opinion in *Crowell.*[3]

Even though the summary judgment motion was still pending, the Prothonotary, on June 21, 1993, issued a second notice of intent to terminate for lack of docket activity because no activity had occurred on the docket for more than two years. It was mailed to the Plaintiffs' counsel but was returned undelivered because he had moved his office and had not complied with Montgomery County Local Rule 1012(c) (Local Rule 1012) that requires an attorney to notify the Court Administrator of a change of address.[4] Not receiving an Activity Status Certificate, on July 26, 1993, without giving notice by publication, the Prothonotary terminated the action for inactivity.

On January 2, 1996, approximately 30 months after the case was terminated, the Plaintiffs filed a Motion to Strike Termination and Reinstate Case as Active Case claiming that the Rule 1901 notice requirements had not been met. The court held that the lack of docket activity was not excused by The Department's outstanding motion for summary judgment because the burden was always on the Plaintiffs as plaintiffs to move the case forward. Reasoning that the failure to receive notice was due to the Plaintiffs' counsel's failure to notify the Court Administrator of his change of address, the trial court denied the motion and this appeal followed.[5]

To rid clogged judicial dockets of cases that show a lack of docket activity, Rule 1901 authorizes the courts of common pleas to terminate cases on their own motion where they have been inactive for an unreasonable period of time. Rule 1901(c) also provides what notice must be given before a case can be terminated. In relevant part, it provides:

> [T]he parties shall be given at least 30 days written notice of opportunity for hearing on such proposed termination, which notice shall be given:
>
> (1) In person or by mail to the last address of record of the parties or their counsel of record and setting forth a brief identification of the matter to be terminated; or
>
> (2) By publication in the manner provided for by rule of court in the legal newspaper designated by rule of court for the publication of legal notices in any case where notice by mail cannot be given or has been returned undelivered.

Once a case has been terminated, the "open judgment" standard that must be met

---

*on the docket unless an activity status certificate is filed with the Prothonotary within such a time. All matters so terminated may not be reinstated except with leave of court, for cause shown* (emphasis added).

2. *Crowell* involved whether a local agency could be liable where there was another joint tortfeasor.

3. *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992).

4. Montgomery County R.C.P. 1012(c) provides "whenever any attorney changes his or her address, it shall be the duty of said attorney to notify immediately the Court Administrator of Montgomery County in writing of such change."

5. Our scope of review of a trial court order terminating a case under Pa. R.J.A.1901 for lack of activity is whether the trial court committed a manifest abuse of discretion in terminating the action. *Blair v. Zoning Hearing Board of Pike Twp.,* 676 A.2d 760 (Pa.Cmwlth.1996).

in opening default judgments has been applied to those seeking reinstatement of a case dismissed, i.e., the petitioner must show good cause why the case should be reactivated. *Martin v. Grandview Hospital,* 373 Pa.Super. 369, 541 A.2d 361 (1988). To meet the "good cause" standard, a party seeking reinstatement must show:

1. the petition for reinstatement was timely filed;

2. a reasonable explanation exists for the docket inactivity; and

3. facts exist supporting a meritorious cause of action.

*Samaras v. Hartwick,* 698 A.2d 71 (Pa. Superior 1997); *Martin v. Grandview Hospital.*

To determine whether the second prong of that test is met, a separate three-part test set forth in *Penn Piping, Inc. v. Insurance Co. of North America,* 529 Pa. 350, 603 A.2d 1006 (1992) is used. *State of The Art Medical Products, Inc. v. Aries Medical, Inc.,* 456 Pa.Super. 148, 689 A.2d 957 (1997). *County of Erie v. Peerless Heater Co.,* 660 A.2d 238 (Pa.Cmwlth.1995). *Penn Piping* further defined a test originally set forth in *James Bros. Lumber Co. v. Union Banking & Trust Company of DuBois,* 432 Pa. 129, 247 A.2d 587 (1968) that provided a judgment of *non pros* may be entered where: (1) a party to the proceedings has shown a lack of due diligence by failing to proceed with reasonable promptitude; (2) there has been no compelling reason for the delay;[6] and (3) the delay has caused some prejudice to the adverse party. In *Penn Piping,* the court examined the prejudice element and held that a two year delay is presumed prejudicial to dismiss any proceeding for lack of activity on the docket. *Penn Piping* at 356, 603 A.2d at 1009.

The Plaintiffs contend that they do not have to meet the "good cause" standard because the mailed notice was returned undelivered and Rule 1901 requires that notice by publication be given. Because that notice was not given, they claim the termination of their action was *void ab initio.* In confront-

ing a similar situation in *Stringer v. Kaytes,* 286 Pa.Super. 551, 429 A.2d 660, 663 (1981), the Superior Court held that even though a party did not receive notice of termination, the dismissal is not automatically invalid or excuses plaintiff from showing "good cause" to have the case reinstated. Instead, it held that timeliness of the request for reinstatement would be from when the plaintiff had actual notice of the termination stating:

It would obviously be unfair to require a party to file a petition to reinstate ... when the prothonotary has neglected to notify the party of the dismissal. It would likewise be illogical, in our opinion, to automatically reinstate the action without requiring a showing of good cause. In those cases, such as the one sub judice, where the requisite notice has not been provided, we believe the most reasonable procedure is to decide the question of the promptness of the petition on the basis of the date when the plaintiff received actual notice, either from the prothonotary or otherwise, of the dismissal of the action. If the court determines that under the circumstances the petition to reinstate has been timely filed, then it should proceed to determine whether the other two conditions necessary to demonstrate good cause have been shown. Instantly, as noted earlier, the lower court deemed it unnecessary to reach the question of whether the conditions set forth in the International Telephone case for establishing good cause had been satisfied. As stated above, we find this to be error. It is our conclusion that the court below must decide whether plaintiff has satisfied those conditions, bearing in mind that the question of the timeliness of the petition to reinstate must be measured from the date plaintiff first actually learned that her action had been dismissed.

*See also Martin v. Grandview Hospital,* 373 Pa.Super. 369, 541 A.2d 361 (1988). We agree with the Superior Court's reasoning and Plaintiffs must meet the good cause standard, albeit with the question of timeli-

---

**6.** *Per se* compelling reasons for delay include bankruptcy, liquidation or in cases awaiting significant development in the law. *Penn Piping;*

*Orriola v. Frick,* 664 A.2d 1110 (Pa.Cmwlth. 1995).

ness determined by when they had actual knowledge of the termination.

Even if the termination is not *void ab initio,* the Plaintiffs contend they established "good cause" for reinstating their action. They contend that it was timely because they filed it "immediately after receiving actual notice" of the termination. While not disputing that the Motion was filed immediately upon receiving actual notice of the termination, the Department and the other Defendants argue that the mailed notice was returned undelivered due to the Plaintiffs' counsel's non-compliance with Local Rule 1012 requiring him to notify the Court Administrator of the relocation of his offices. In effect, because of that failure, they are claiming that the Plaintiffs should be deemed to have received notice of the termination the day it was mailed and not when they became aware that the case had been terminated. Because the motion to reinstate was filed 30 months from that date, they contend that the reinstatement request cannot be considered timely filed.

■ Rule 1901 provides that when the mailed notice is returned undelivered, the Prothonotary must give notice by publication in a legal newspaper. Because anyone who has filed an action has the obligation to monitor where legal notices are published, notice of publication avoids having to determine why the mailed notice was returned. *See Toczylowski v. General Bindery,* 359 Pa.Super. 572, 519 A.2d 500 (1986) (*non pros* was properly granted to appear after notice was given in the legal journal where counsel filed is obliged to keep abreast of publications to the bar). Because the failure to notify the court of a change of address does not act to impute notice, and the Motion to Reinstate was filed "immediately" after they had actual notice, it was timely filed.

■ The Plaintiffs also contend that there is a reasonable explanation for the lack of docket activity under *Penn Piping.* They contend that any delay in the proceedings was entirely attributable to The Department because, as the moving party, it was required to reschedule its motion for summary judgement. Recently, in *Doyle v. Tesauro,* 694 A.2d 626 (Pa. Superior 1997), the Superior Court addressed a similar situation. In that case, the plaintiffs filed a praecipe to place the case on the trial list but the defendants failed to do the same, and a two and a half-year delay ensued. The court reactivated the case because the delay was caused by the defendant and plaintiffs "complied with the rules to get the matter to the threshold of the trial." *See also Herb v. Snyder,* 454 Pa.Super. 612, 686 A.2d 412 (1996) (where the defendants failed to reschedule preliminary objections that had somehow been dropped from the argument list, any lack of activity was chargeable to defendants and the case should not be terminated.)

Because the delay was not attributable to Plaintiffs, then the Department suffered no cognizable prejudice under *Penn Piping.* In *Mudd v. Nosker Lumber, Inc.,* 443 Pa.Super. 483, 662 A.2d 660 (1995), the Superior Court held that the presumption of prejudice arising from the lack of docket activity may be rebutted by other circumstances, namely defendant's own conduct reasoning:

It is simply unreasonable to accept the proposition that the [defendants] were somehow prejudiced by the delay in prosecution when they themselves requested additional delays. Our Supreme Court's decision in Penn Piping was meant to protect defendants from the unfairness, anxiety and prejudice that can result from a plaintiff's failure to pursue a threatened lawsuit. We are hard-pressed to accept that our Supreme Court in establishing the 'presumption of prejudice' in that case envisioned a situation in which defendants, through their own subterfuge, are able to avoid a final determination of liability. . . .

Moreover, to accept the proposition that [defendants] have been prejudiced by the delay would stand the principle underlying the grant of *non pros* on its head. The grant of *non pros* has evolved as a mechanism to ensure that plaintiffs do not take advantage of defendants through dilatory tactics. The principle should apply equally to defendants. If the plaintiff cannot delay a lawsuit to achieve a desired event, then neither should a defendant.

*Id.* 662 A.2d at 663 (citations omitted). *Biondillo v. Department of Transportation,* 674 A.2d 1175, (Pa.Cmwlth.1996).

In this case, the Plaintiffs certified that the case was ready for trial, it was placed on the trial list and would have been tried if The Department had not filed its motion for summary judgment causing the case to be removed from the trial list pending the outcome of *Crowell.* Applying the Superior Court's reasoning in *Doyle* and *Herb,* any delay after *Crowell* was decided in 1992, is chargeable to The Department since it failed to reschedule its motion for summary judgment. Because The Department was chargeable for the delay, it cannot claim prejudice and the Plaintiffs have a reasonable explanation for the lack of docket activity.

Because no one disputes that they have a meritorious cause of action, the Plaintiffs have shown "good cause" to have their case reinstated. Accordingly, the order of the Court of Common Pleas of Montgomery County is reversed.

### ORDER

AND NOW, this 10th day of November, 1997, the order of the Court of Common Pleas of Montgomery County, dated July 23, 1993, is reversed and the action at No. 82–03990, is reinstated.

RODGERS, Senior Judge, concurs in the result only.