## Nees v. Anderson

*Thomas R. Kline, David K. Inscho* and *Geary L. Yeisley,* for plaintiff

*Daniel J. Ferhat, Anna M. Bryan, Andrew F. Susko* and *Kim Kocher,* for defendants Children's Hospital of Philadelphia, Children's Hospital of Philadelphia, Children's Hospital of Philadelphia Specialty Care, Cardiac Center at Children's Hospital of Philadelphia and Terry Anderson

ROBINSON, *J.*, April 10, 2013—Defendants in this medical malpractice action filed preliminary objections on November 26, 2012 raising three issues: (1) this court's jurisdiction over Dr. Terry Anderson; (2) the constitutionality of the 2011 amendment to Pa.R.C.P. 1006(a.1); and (3) whether venue as it relates to Dr. Anderson is appropriate in Philadelphia County.

Plaintiff brings this case following the death of 15-year-old Michael Fisher. When Fisher was four years old, he came under the care of Dr. Terry Anderson for a heart murmur. Although Dr. Anderson's office is located in New Jersey and he sees patients only in New Jersey, he is employed by Children's Hospital of Philadelphia, which is, as its name implies, a Pennsylvania-based hospital. Dr. Anderson's office in New Jersey was a "CHOP Specialty Care Center."

When the CHOP Specialty Care Center needed to send a bill, the bill would be sent from Pennsylvania, presumably from another office in the CHOP system. Bills and payments relating to Fisher's health insurance were also sent from and received in Pennsylvania.

Dr. Anderson diagnosed Fisher with a congenital heart defect and informed Fisher that his condition could necessitate surgery at some point. Fisher saw Dr. Anderson annually and underwent various tests under Dr. Anderson's care.

When Fisher was 13 years old, he developed shortness of breath and Dr. Anderson ordered an exercise stress test and pulmonary function test to be performed at CHOP in Philadelphia. Plaintiff alleges that although these tests revealed cardiac-related abnormalities, Dr.

Anderson negligently failed to place any restrictions on athletic activity on Fisher. While playing roller hockey in September of 2010, Fisher collapsed and died.

## Jurisdiction

Dr. Anderson's first claim is that he should not be subject to jurisdiction in Pennsylvania because the injury and treatment in this case occurred in New Jersey and because he neither lives in nor practices medicine in Pennsylvania.

It is undisputed that Dr. Anderson is not a resident of Pennsylvania. When a state exercises personal jurisdiction over a non-resident defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Pennsylvania's Long-Arm statute provides for the exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause of the United States Constitution[1]. *Kubik v. Letteri*, 614 A.2d 1110 (1992). The statute states, in relevant part:

> The jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of §5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and

---

1. Plaintiffs also argue that a specific provision of the Long-Arm Statue, §5322(a)(1), creates a basis for jurisdiction because Dr. Anderson "transacted business in the Commonwealth." Because §5322(b) so clearly establishes jurisdiction, this court finds a discussion as to whether a billing system where a patient is treated in New Jersey but receives a bill from Pennsylvania constitutes the doing of business "in" the Commonwealth unnecessary.

may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.C.S. §5322. The framework for a court's analysis of a defendant's minimum contacts with a state was established by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under that framework, a defendant's contact with a state must be related to the Plaintiff's claim and constitute "purposeful availment", ensuring that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). It is the defendant's own actions that must create a connection to the forum state; this connection may result from engaging in significant activities in the state or by creating continuing obligations between himself and the forum state. *Id.*

Once a court finds that minimum contacts exist, the court must then determine whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Factors to be considered are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Mendel v. Williams*, 53 A.3d 810 (Pa. Super. Ct. 2012).

In this case, Dr. Anderson has sufficient minimum contacts to satisfy the standard explained in *International*

*Shoe*. During the entire course of Dr. Anderson's treatment of Michael Fisher, the doctor was part of a Pennsylvania-based network of health care services. Dr. Anderson had purposeful, extensive, and significant contact with Pennsylvania in relation to the instant case.

Defendants note that Dr. Anderson did not physically travel to Pennsylvania in order to treat Michael Fisher at any time and only once sent Fisher to Pennsylvania to have a test done. While physical presence in the forum state is certainly relevant to a minimum contacts analysis, a lack of a physical connection to the forum is "not detrimental to a personal jurisdiction analysis." *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992). Electronic or other non-physical communications may count toward minimum contacts. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993). Courts have warned, however, that these kinds of communications are still subject to the "purposeful availment" question; the Third Circuit in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.2d 446 (3d Cir. 2003) rejected the notion that "informational communications", including websites, could form the basis for personal jurisdiction because defendants had not specifically directed the website at New Jersey residents.

The parties agree that while Dr. Anderson's office is located in New Jersey, the CHOP billing system is located in Pennsylvania. This means that literally every time Michael Fisher visited Dr. Anderson, the doctor contacted parts of the CHOP network in Pennsylvania so that a CHOP office in Pennsylvania could send out the appropriate bills.

Similarly, all of the billing related to Fisher's health insurance was done from Pennsylvania, and payments received by CHOP from the insurance company were received in Pennsylvania. The fact that the *entire* financial aspect of Dr. Anderson's relationship with Fisher (and therefore this case) involved Pennsylvania is a strong indicator that jurisdiction here is appropriate.

Furthermore, as plaintiffs note, Dr. Anderson's status as a "CHOP physician" is significant. Rather than simply hold himself out to be an experienced cardiac specialist, Dr. Anderson intentionally affiliates himself with a Pennsylvania hospital. It is not unlikely, therefore, that the decedent, among other patients, would decide to seek out Dr. Anderson's care, as opposed to the care of another, unaffiliated physician, *because* Dr. Anderson is affiliated with a well-regarded Pennsylvania institution. Dr. Anderson's reliance on the reputation of this Pennsylvania institution in order to attract patients supports jurisdiction in the Commonwealth.

Dr. Anderson's affiliation with CHOP is also what led him to send Michael Fisher to Pennsylvania to undergo testing. This was not a situation where Fisher was advised he needed a procedure and told to locate a facility of his choosing for the procedure: this test was done as part of Dr. Anderson's care, and Fisher was told to go to a facility that was part of Dr. Anderson's network. The fact that Dr. Anderson sends patients to a Pennsylvania site (with which he is affiliated) when orchestrating a patient's care further supports the idea that the doctor's contacts are more than sufficient for an exercise of jurisdiction.

Defendants point to *Mendel v. Williams* to suggest that

our Superior Court has held that New Jersey doctors who treat patients in New Jersey are not subject to specific jurisdiction in Pennsylvania. The court in *Mendel* was faced with a case where a New Jersey doctor treated a New Jersey patient in New Jersey, and the patient just so happened to have been eventually transferred to a hospital in Pennsylvania. The New Jersey doctor did nothing purposeful in that case to establish any sort of contact with Pennsylvania, and the court held that because of this, the doctor was not subject to jurisdiction.

Dr. Anderson's contacts with Pennsylvania, described above, are as intentional as the contacts in *Mendel* were random and fortuitous. A New Jersey doctor who does not affiliate herself with Pennsylvania in any way whatsoever should not, consistent with notions of fair play and substantial justice, fear being brought into court in Pennsylvania. Dr. Anderson, on the other hand, has intentionally, purposefully, and continuously established significant and case-specific contacts with Pennsylvania.

Because Dr. Anderson has sufficient minimum contacts with Pennsylvania, this court must now examine whether an exercise of jurisdiction is consistent with notions of fair play and substantial justice. The factors to be considered are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Mendel v. Williams*, 53 A.3d 810 (Pa. Super. Ct. 2012).

By all accounts, it is not a substantial burden on Dr. Anderson to be expected to come to court in Pennsylvania. He practices medicine in the Philadelphia suburbs. The record reveals that not only could Dr. Anderson travel to Philadelphia without burden, he does: he is a professor at the University of Pennsylvania's medical school, which is located in Philadelphia.

Because Dr. Anderson works as a CHOP physician, and the question of his liability is closely tied to the question of the liability of a Pennsylvania hospital, Pennsylvania has a clear interest in adjudicating this dispute. It is likely that as an employee of CHOP, Dr. Anderson followed at least some protocols promulgated by his Pennsylvania employer; Pennsylvania's interest in examining these issues is equally clear.

Similarly, the most efficient resolution" of this controversy, which will remain in Pennsylvania at least in part even if the claims against Dr. Anderson are dismissed, is for one trial to occur. Plaintiff's case against CHOP must, by definition, include (and will likely consist almost entirely of) an inquiry into the actions of Dr. Anderson. Dismissing Dr. Anderson, who would certainly need to testify at trial anyway, would lead to a great deal of inefficiency for the plaintiff, all defendants, and Pennsylvania and New Jersey courts.

The plaintiff's interest in obtaining convenient and effective relief is, for many of the same reasons, best achieved by allowing for jurisdiction over Dr. Anderson. Plaintiffs ability to obtain relief will be impaired if plaintiff is permitted to sue a Philadelphia-based hospital in Philadelphia but is not permitted to sue that hospital's

employee, whose actions form the basis for the case.

## Venue as to All Defendants

Defendants argue that even if Dr. Anderson is subject to jurisdiction in this case, this court should find that venue is improper for all defendants because the statutory basis for venue in this case is unconstitutional.

Plaintiffs bring this case in Philadelphia County pursuant to Pa.R.C.P. 1006(a.1), which states that:

> (a.1) Except as otherwise provided by subdivision (c), a medical processional liability action may be brought against a health care provider for a medical processional liability claim only in a county in which the cause of action arose. This provision does not apply to a cause of action that arose outside the Commonwealth.

Pa.R.C.P. 1006(a.1). Prior to 2011, this provision did not include the sentence "This provision does not apply to a cause of action that arose outside the Commonwealth." Without this sentence, the rule had the effect of leaving plaintiffs whose causes of action arose somewhere other than a county in Pennsylvania without a venue, even if those plaintiffs would be otherwise permitted to bring suit in the Commonwealth. Defendants argue the rule as amended results in "arbitrary" and "statewide" venue for out-of-state healthcare professionals because the venue limitation placed on their in-state counterparts does not apply.

The parties agree that of the available levels of scrutiny courts employ to examine the constitutionality of statutes, the appropriate one here is rational basis scrutiny. When examining a statute under this level of scrutiny, courts

ask "whether the law in question is rationally related to a legitimate state goal, or whether the state action arbitrarily works to deny an individual of life, liberty, or property." *Laudenberger v. Port Authority of Allegheny County*, 436 A.2d 147 (1981).

The 2011 amendment's relation to a state interest is clear. Before 2002, Pennsylvania had one general venue rule for all kinds of cases. This rule still exists, but in 2002 the Pennsylvania Supreme Court created a new venue rule specifically for medical malpractice cases. Pa.R.C.P. 1006(a.1) provided that in medial malpractice cases, venue would only be proper in the county where the malpractice occurred.

In the years following the introduction of this rule, it became clear the rule operated to strip some litigants of a substantive right: when a plaintiff attempted to sue a doctor in Pennsylvania courts for a cause of action that arose out of state, the plaintiff was left without any venue option despite jurisdiction being appropriate in the Commonwealth.

In 2011, the Supreme Court amended Rule 1006(a.1) to remedy this problem. The Court amended the rule so that the limitation on venue for medical malpractice cases did not apply where the claim arose out of state. Rather, normal venue rules would apply[2]. The Explanatory Note to the amendment outlined this reasoning:

---

2. Contrary to defendants' claim, the 2011 amendment does not operate to grant some extra venue advantage to plaintiffs and "arbitrarily" subject doctors to "statewide venue". Any plaintiff may only sue a healthcare provider (or any other defendant) in a county where that defendant is subject to venue. Therefore, venue would be neither arbitrary nor statewide.

Currently, a lawsuit based on medical treatment furnished in another state cannot be brought in Pennsylvania even if the defendants have substantial contacts with the state whereas Pennsylvania defendants can be sued in any state in which they have at least minimum contacts. The amendment to this rule would eliminate this discrepancy.

Pa.R.C.P. 1006, Explanatory Comment-2011. This amendment, therefore, furthered the state interest of fixing a procedural quirk that operated to grant immunity to certain healthcare providers, and restoring a plaintiffs ability to find a venue for a case that was otherwise properly filed in Pennsylvania.

Because the amendment operated to allow plaintiffs to exercise a right they already had, it did not deprive healthcare providers of "life, liberty, or property." Healthcare providers who were subject to jurisdiction in Pennsylvania (and, in fact, venue, for cases that did not involve medical professional negligence) never had a right *not* to have suit brought in Pennsylvania; it would follow that the amendment did not deprive healthcare providers of any right.

Defendants cite *Power Mfg. Co. v. Saunders*, 274 U.S. 490 (U.S. 1927), in support of their argument that it violates the Equal Protection Clause to use venue rules to differentiate between in-state and out-of-state litigants. In fact, *Power Manufacturing* simply confirms the need for the Supreme Court to have amended the venue rules and supports the argument that the 2011 amendment represents an example of the kind of legislation that is permissible under the constitution:

[The Equal Protection Clause] does not prevent a State from adjusting its legislation to differences in situation or forbid classification in that connection; but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.

*Power Mfg. Co. v. Saunders*, 274 U.S. at 493. The classification created by the 2011 amendment is not arbitrary because it distinguishes between those plaintiffs whose substantive rights were left intact after rule 1006(a.1) was enacted and those whose were not. This court is hard-pressed to think of a better example of a "real and substantial difference" that has a "reasonable relation to the subject of the particular legislation"; the amendment set out to fix a loophole where certain injured parties were stripped of their substantive right to bring a lawsuit in Pennsylvania[3].

Because the 2011 amendment to Pa.R.C.P. 1006(a.1) is rationally related to a legitimate state goal, and because it does not arbitrarily discriminate against out-of-state healthcare providers, it survives constitutional scrutiny. This court therefore declines to declare the amendment unconstitutional and defendant's preliminary objections are overruled.

### Venue as to Dr. Anderson

Dr. Anderson argues that even if Pa.R.C.P. 1006(a.1), as amended, is constitutional, venue is improper against

---

3. The amendment, on the other hand, does not strip any defendants of any right. Between 2002 and 2011, a defendant hospital or defendant doctor did not have a right not to be sued in Pennsylvania where the cause of action arose out of state; it was simply that plaintiffs did not have a procedural way to exercise this right.

him under the rules as they stand. This court disagrees and overrules the preliminary objection.

Venue is undisputedly proper for CHOP in Philadelphia. Pa.R.C.P. 1006(c) states that "an action to enforce joint or joint and several liability against two or more defendants, except actions in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which venue may be laid against any one of the defendants under the general rules of subdivisions (a) and (b)." Pa.R.C.P. 1006(c). Dr. Anderson argues that because he is not alleged to be "jointly liable" with CHOP in the sense that the two defendants did not each act to contribute to an injury, Rule 1006(c) prohibits venue in Philadelphia.

As plaintiff points out, there is some confusion surrounding the term "joint liability" because sometimes it refers to a theory a liability distinct from vicarious liability, and sometimes it a broader, more generic term that "subsumes the concept of vicarious liability." *Crowell v. City of Philadelphia*, 613 A.2d 1178 (1992).

The Pennsylvania Rules of Civil Procedure provide guidance as to how to interpret Rule 1006(c). Pa.R.C.P. 126 instructs courts to liberally interpret rules so that they do not "affect the substantive rights of the parties." As established in the previous discussion relating to venue, plaintiff has a substantive right to sue CHOP and Dr. Anderson in Pennsylvania. Interpreting Rule 1006(c) as defendants do would deprive plaintiff of a Pennsylvania venue for this case even where it is clear that jurisdiction exists.

This court therefore declines to interpret Rule 1006(c)

such that cases involving vicarious liability can not be venued together even where cases involving joint liability could. It is clear that the appropriate definition of "joint liability" in this context is the generic one, which "subsumes the concept of vicarious liability." Dr. Anderson's preliminary objection must be overruled.