# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.F.V., a minor, by her legal guardians : \
Kimberly Varano and Joseph Varano, : \
and Kimberly Varano and Joseph : \
Varano in their own right : \
      : No. 218 C.D. 2023 \
      v.      : \
      : Argued: June 5, 2024 \
South Philadelphia High School : \
and Philadelphia School District, : \
      Appellants      :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge[1] \
          HONORABLE PATRICIA A. McCULLOUGH, Judge \
          HONORABLE ANNE E. COVEY, Judge \
          HONORABLE MICHAEL H. WOJCIK, Judge \
          HONORABLE LORI A. DUMAS, Judge \
          HONORABLE STACY WALLACE, Judge \
          HONORABLE MATTHEW S. WOLF, Judge

**OPINION BY** \
**JUDGE DUMAS**                         **FILED: June 9, 2025**

      The Philadelphia School District (District) appeals the order entered by the Court of Common Pleas of Philadelphia County (trial court), which overruled the District's preliminary objections. On appeal, the District contends it is immune from any liability stemming from the alleged sexual assault of L.F.V. by two other minor students. We affirm.

---

[1] This case was argued before a panel of the Court that included Judge Ceisler. Judge Ceisler's service with this Court ended on January 3, 2025, before the Court reached a decision in this matter. Accordingly, President Judge Cohn Jubelirer was substituted for Judge Ceisler as a panel member in this matter and considered the matter as submitted on the briefs.

## I. BACKGROUND[2]

In October of 2021, three minor students (two male, one female) attended a District school. All three students were enrolled in special education and required supervision by the District employees. During a physical education class, the two males pushed and pulled L.F.V. behind the gym bleachers, into a bathroom, and sexually assaulted her, following which she returned to class. The District employees supervising the class allegedly did not witness the assault.

Subsequently, Kimberly and Joseph Varano sued the District on behalf of L.F.V. and individually in their own right (collectively, Plaintiffs). Plaintiffs raised two counts of negligence. First, on behalf of L.F.V., Plaintiffs alleged that the District owed L.F.V. a duty to protect her while at school and breached that duty through various actions. For example, the District failed to, *inter alia*, (1) monitor all three minors and the gym, hallway, and bathroom; and (2) supervise the employees overseeing the class. As a result of the District's negligence, Plaintiffs contended L.F.V. suffered mental anguish, educational setbacks, exacerbation of her preexisting psychological conditions, and impairment of her earning capacity, among other injuries.

Second, Plaintiffs alleged the District negligently inflicted emotional distress on Kimberly and Joseph Varano. In support, Plaintiffs averred that the District had a duty to supervise and protect L.F.V. while at school. Plaintiffs asserted

---

[2] In presenting the background, and in reviewing an order "resolving preliminary objections, we must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. We may reject conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Marshall v. Se. Pa. Transp. Auth.*, 300 A.3d 537, 540 n.1 (Pa. Cmwlth. 2023) (cleaned up). The parties stipulated that South Philadelphia High School should be dismissed without prejudice and the caption amended. Stip., 9/27/22. However, the parties have not requested that this Court amend the caption.

that upon learning of the sexual assault, they suffered emotional distress and lost wages due to taking time off from work. As a result, Plaintiffs requested monetary damages.

The District filed preliminary objections contending, *inter alia*, that it is immune under what is commonly known as the Political Subdivision Tort Claims Act (Act), recodified at 42 Pa.C.S. §§ 8541-8542. Specifically, the District asserted that Plaintiffs failed to allege that a District employee sexually assaulted L.F.V., which would have prevented the District from invoking immunity. Plaintiffs filed an answer to the preliminary objections.[3]

The trial court overruled the District's preliminary objections, primarily relying on unreported state and federal decisions as well as legislative history. Trial Ct. Order, 12/12/22. Per the court, Plaintiffs pleaded sufficient facts that the District's negligent omissions—failing to supervise its employees during gym class—resulted in Plaintiffs' injuries. Trial Ct. Op., 7/11/23, at 5.

The District timely filed a motion to certify the order for an interlocutory appeal, which the trial court denied. Trial Ct. Order, 1/20/23. The District timely filed a petition for permission to appeal with this Court on February 17, 2023. This Court granted the petition, reasoning that the trial court's order was immediately appealable as a collateral order under Pa.R.A.P. 313 and *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359 (Pa. 2021). Although the trial court's order was immediately appealable, under Pa.R.A.P. 1316, a timely petition for permission to appeal is treated as a notice of appeal. Pa.R.A.P. 1316.[4] Appellants timely filed a

---

[3] Although it was "procedurally improper to raise the defense of immunity in preliminary objections," Plaintiffs waived any procedural defect by filing an answer instead of preliminary objections to the District's preliminary objections. *N.W.M. ex rel. J.M. v. Langenbach*, 316 A.3d 7, 13 n.21 (Pa. 2024).

[4] Pennsylvania Rule of Appellate Procedure 1316(a) provides that this Court must "treat a

court-ordered Pa.R.A.P. 1925(b) statement, and the trial court filed a responsive opinion.

## II. ISSUE

The District raises a single issue: whether it is immune under the Act because a third party, and not the District or its employees, committed the sexual abuse. Dist.'s Br. at 4.

## III. DISCUSSION[5]

Under the Act, "a local agency may be liable for damages that are (1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Act." *West ex rel. S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 344 (Pa. Cmwlth.) (*en banc*) (cleaned up), *appeal filed*, (Pa., No. 339 WAL 2024, filed Dec. 6, 2024). In other words, the Act provides that a school district has governmental immunity and is immune from suit subject to nine categories of exceptions. 42 Pa.C.S. §§ 8501, 8541-8542.[6]

Generally, no school district "shall be liable for any damages on

---

request for discretionary review of an order that is immediately appealable as a notice of appeal if a party has filed a timely petition for permission to appeal pursuant to Pa.R.A.P. 1311." Pa.R.A.P. 1316(a). Rule 1311(a), in turn, states in relevant part that an "appeal may be taken by permission from an interlocutory order . . . for which certification pursuant to 42 Pa.C.S. § 702(b) was denied . . . ." Pa.R.A.P. 1311(a). Here, the District filed a petition for permission to appeal from the trial court's order denying Section 702(b) certification. Pa.R.A.P. 1311(b).

[5] Statutory interpretation is an issue of law subject to a *de novo* standard of review. *MFW Wine Co. v. Pa. Liquor Control Bd.*, 318 A.3d 100, 113 n.22, 122 (Pa. 2024). In construing the Act, we comply with the Statutory Construction Act of 1972. 1 Pa.C.S. §§ 1501-1991; *MFW Wine*, 318 A.3d at 131.

[6] The Act defines "local agency" as a "government unit other than the Commonwealth government." *See Zauflik v. Pennsbury Sch. Dist.*, 104 A.3d 1096, 1100 (Pa. 2014). The term includes, but is not limited to, a school district. *Id.*

4

account of any injury to a person or property caused by any act of the [school district] or an employee thereof or any other person." 42 Pa.C.S. § 8541.[7] A school district, however, may be liable if two conditions are satisfied. *Id.* § 8542(a). First, the plaintiff's "damages would be recoverable under common law . . . ." *Id.* § 8542(a)(1). Second, the plaintiff's injury "was caused by the negligent acts of the [school district] or an employee thereof acting within the scope of his office or duties with respect to one" of the nine categories of exceptions at 42 Pa.C.S. § 8542(b)(1)-(9). *Id.* § 8542(a)(2).[8]

In turn, Section 8542(b) begins with the clause: "*The following acts by a local agency or any of its employees* may result in the imposition of liability on a local agency" and then lists nine categories of acts that may result in liability. *Id.* § 8542(b) (emphasis added) (prefatory clause). The initial eight categories, which were enacted contemporaneously with the Act in 1980, specify acts "of the local

---

[7] "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541.

[8] Section 8542(a) of the Act follows:

**(a) Liability imposed.--**A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a).

agency" that could result in liability  *Id.* § 8542(b)(1)-(8).  For example, if the plaintiff's "injury was caused by the negligent acts of the local agency . . . with respect to" a "dangerous condition of trees, traffic signs, lights or other traffic controls," then the local agency could be liable.  *Id.* § 8542(a)(2), (b)(4); *Crowell v. City of Phila.*, 613 A.2d 1178, 1184 (Pa. 1992).

In 2019, the legislature added a ninth category, which specifies conduct constituting "an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."  *Id.* § 8542(b)(9) (sexual abuse exception).  Section 5551(7) of the Judicial Code, in turn, identifies two categories of offenses, both of which require a minor victim: (1) selected offenses under the Crimes Code; and (2) conspiracy or solicitation to commit any of the selected offenses, which include sexual assault. *Id.* § 5551(7); *City of Phila. v. J.S.*, 316 A.3d 619 (Pa. 2024) (*per curiam* order) (granting appeal to resolve whether the sexual abuse exception applies only to minors).[9]

---

[9] Section 8542(b) of the Act states:

**(b) Acts which may impose liability.--**The *following acts by a local agency or any of its employees* may result in the imposition of liability on a local agency:

. . . .

(4) *Trees, traffic controls and street lighting.*--A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

. . . .

(9) *Sexual abuse.*--Conduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) if the injuries to the

## A. Immunity Under 42 Pa.C.S. § 8541

### 1. Arguments

The District contends that it is immune "from the acts of third parties" under 42 Pa.C.S. § 8541. Dist.'s Br. at 12. According to the District, it only loses this immunity when a District employee commits sexual abuse. *Id.* Because two minors—and not a District employee—committed the sexual abuse, the District reasons it is immune from suit even if the District's "negligent omissions caused her injuries . . . ." *Id.* at 12-15 (discussing *Chevalier v. City of Phila.*, 532 A.2d 411 (Pa. 1987), and *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118 (Pa. 1987) (*Mascaro II*)).

Plaintiffs distinguish *Chevalier* and *Mascaro II* on their facts. Pls.' Br. at 38-39. In their view, the District could be jointly liable with a third party for negligence. *Id.* at 27-29 (discussing *Crowell* and *Jones v. Chieffo*, 700 A.2d 417 (Pa. 1997) (plurality)). Plaintiffs emphasize that the District should be liable for negligence that enabled the sexual abuse—not the sexual abuse itself. *Id.* at 16-17.

### 2. Discussion

In *Mascaro II*, our Supreme Court resolved immunity to a negligence claim in which "the plaintiff's family had been grievously injured by a person who had escaped from" a Philadelphia correctional facility but the injuries "occurred well

---

plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 Pa.C.S. § 8542(b)(9) (emphasis added). Section 5551(7) of the Judicial Code follows:

An offense under any of the following provisions of 18 Pa.C.S. (relating to crimes and offenses), or a conspiracy or solicitation to commit an offense under any of the following provisions of 18 Pa.C.S. if the offense results from the conspiracy or solicitation, if the victim was under 18 years of age at the time of the offense:

. . . .

Section 3124.1 (relating to sexual assault).

42 Pa.C.S. § 5551(7).

away from" Philadelphia-owned property. *Crowell*, 613 A.2d at 1180 (summarizing *Mascaro II*). The *Mascaro II* Court reasoned that Philadelphia was immune "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or *any other person*." *Id.* (emphasis in original). Our Supreme Court rejected the plaintiff's attempt to invoke the real estate exception to immunity, which applies "only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* (emphasis in original).

In *Chevalier*, the plaintiff was mugged in a Philadelphia-maintained parking lot. *Chevalier*, 532 A.2d at 412-13.[10] The *Chevalier* Court reasoned that under the Act, Philadelphia was immune because "harm caused by third [parties] may not be imputed to a local agency or its employees." *Id.* (discussing, *inter alia*, *Mascaro II*). Because the plaintiff's "injuries were caused by the criminal acts of a third party, [Philadelphia was] insulated from *all* liability for the harm caused by such a party." *Id.* (emphasis in original). Subsequently, courts applied the holdings strictly.

In *Crowell*, our Supreme Court held we misunderstood its prior decisions. In *Crowell*, the plaintiffs and a drunk driver were each driving in opposite directions. *Crowell*, 613 A.2d at 1179. Philadelphia, however, had wrongly placed a

---

[10] The plaintiff asserted that his injuries were the result of Philadelphia's failure to sufficiently light the parking lot. *Chevalier*, 532 A.2d at 413. The trial court granted Philadelphia's motion for judgment on the pleadings, reasoning that the complaint failed to allege that Philadelphia knew or should have known of a dangerous condition due to the poor lighting. *Id.* at 412 (dismissing the complaint with prejudice without addressing Philadelphia's immunity). This Court reversed, reasoning that the trial court should have granted the plaintiff leave to amend the complaint. *Id.* at 413. Our Supreme Court reversed this Court and affirmed the trial court on other grounds. *Id.*

sign that directed the drunk driver to turn into the plaintiff's vehicle, injuring them. *Id.* A jury found Philadelphia was 20% negligent, and this Court reversed the judgment against Philadelphia based on *Mascaro II*. *Id.* at 1180.[11]

The *Crowell* Court reversed, holding we had misconstrued *Mascaro II*, which involved vicarious liability. *Id.* at 1181, 1183.[12] Our Supreme Court then explained how to identify factual scenarios that could potentially trigger one of the exceptions to immunity. *Id.* at 1183. To invoke one of the immunity exceptions properly, the "specific facts" must "fall squarely within one of the exceptions." *Id.* at 1184. If the specific facts allege the local agency's joint negligence with the third party (as opposed to vicarious or secondary liability), then the local agency could be held liable. *Id.* (holding that when "a plaintiff is injured and brings an action against a governmental unit, the governmental unit can be subjected to liability despite the presence of an additional tortfeasor if the governmental unit's actions would be sufficient to preclude it from obtaining indemnity from another for injuries rendered to a third person"); *accord Jones*, 700 A.2d at 419 (interpreting *Crowell* as holding "a municipality can be liable despite the presence of a third party if it is jointly negligent").[13]

_____

[11] The plaintiffs sued Philadelphia and the drunk driver, contending that Philadelphia was *not* immune under one of the extant exceptions to immunity. *Crowell*, 613 A.2d at 1179. Specifically, the fourth exception stated that Philadelphia could be liable for a dangerous condition from a traffic sign. *Id.* On appeal to this Court, we reversed the judgment entered against Philadelphia, reasoning that under *Mascaro II*, Philadelphia could not be held jointly liable for the tortious acts of "any other person," *i.e.*, the other driver. *Id.*

[12] Our Supreme Court reiterated that Philadelphia was immune to claims "based upon a theory of vicarious liability." *Crowell*, 613 A.2d at 1183. None of the 42 Pa.C.S. § 8542 exceptions apply absent the negligent actions of a local agency or its employee. *Id.* & nn.8-9 ("a fundamental principle governing the immunity exceptions was the elimination of the imputation of negligence back through a non-governmental actor to the governmental unit").

[13] "Joint tortfeasor liability, on the other hand, arises when two or more persons acting together injure another." *Crowell*, 613 A.2d at 1181-82 (stating that "joint liability is imposed on a person by virtue of actions taken in concert with another tortfeasor" (cleaned up)). The *Crowell*

In *Jones*, our Supreme Court reiterated that a municipality could be held jointly liable for negligence even if the municipality did not injure the plaintiffs. *Jones*, 700 A.2d at 418. In that case, the plaintiffs were injured "when a car being pursued by the police collided with" the plaintiffs' car.[14] *Id.* The plaintiffs sued, *inter alia*, Philadelphia and the police officer. *Id.* The defendants successfully moved for summary judgment, reasoning that they could not be "liable for the criminal or negligent acts of the fleeing driver" under 42 Pa.C.S. § 8541. *Id.* at 419. This Court reversed, reasoning that a jury must decide whether the defendants' "negligence was a substantial factor causing [the plaintiffs'] harm and whether the [fleeing] driver's act was a superseding cause precluding governmental liability." *Id.* Our Supreme Court agreed Philadelphia was not presumptively immune. *Id.* at 420 (discussing *Powell v. Drumheller*, 653 A.2d 619 (Pa. 1995)).[15] A jury must resolve whether the defendants' alleged negligence was a substantial factor in

Court explained that Philadelphia would be immune under 42 Pa.C.S. § 8541 under the following fact scenario: "an injured person sought to sue the city for injuries he received when scaffolding around a city owned property collapsed. The cause of the collapse was the unsafe manner in which the independent contractor constructed the scaffold." *Id.* at 1184 n.10 (summarizing *Maloney v. City of Phila.*, 535 A.2d 209 (Pa. Cmwlth. 1987)). Because the *Maloney* plaintiff alleged that Philadelphia failed "to supervise and inspect the acts of another," *i.e.*, the independent contractor, this Court held Philadelphia was immune from suit. *Id.* (explaining that because Philadelphia's "purported liability was merely derivative of the contractor's negligence," Philadelphia was immune under "the 'any other person' language of § 8541").

[14] The police car did not have a working siren, and the plaintiffs asserted, *inter alia*, the municipality negligently failed to maintain the police cars. *Jones*, 700 A.2d at 419.

[15] "In *Powell*, a decedent's estate sued a drunk driver and the Commonwealth following a car accident." *Jones*, 700 A.2d at 419. "The estate alleged that the Commonwealth negligently designed the road where the accident occurred." *Id.* The *Powell* Court held that the Commonwealth was not immune because a jury could find that although the drunk driver was a cause, the Commonwealth's negligent design could also be a cause. *Id.* The drunk driver's criminal negligence, per the *Powell* Court, was not "a superseding cause relieving [the Commonwealth] of liability as a matter of law." *Id.* A factfinder resolves the issue of concurrent causation, *i.e.*, whether the municipality's alleged negligence was a substantial factor in causing the plaintiff's injuries. *Powell*, 653 A.2d at 623.

10

causing the plaintiffs' injuries. *Id.*[16]

In sum, notwithstanding Section 8541's language stating that a local agency is immune from liability for harm caused by "any other person," our Supreme Court limited the application of that clause to factual scenarios involving vicarious liability. *Crowell*, 613 A.2d at 1181, 1183. In contrast, a local agency could be jointly liable for negligence even if "any other person" harmed the victim. *Powell*, 653 A.2d at 622, 624 (explaining that "any violation of a criminal statute" does not constitute "a superseding cause. Instead, the proper focus is not on the criminal nature of the negligent act, [*e.g.*, sexual assault,] but instead on whether the act was so extraordinary as not to be reasonably foreseeable"). In short, our Supreme Court rejected a broad reading of *Chevalier* and *Mascaro II*.

Instantly, in accord with our Supreme Court's rejection, we also rebuff the District's broad reading of Section 8541 that would immunize the District for damages caused by any other person. *Chevalier* and *Mascaro II*, which predate the sexual abuse exception, suggest a sweeping immunity for any harm caused by third parties. *See Chevalier*, 532 A.2d at 413; *Crowell*, 613 A.2d at 1181 (rejecting a broad interpretation of *Mascaro II*). Subsequently, our Supreme Court rejected any such suggestion, reasoning that local agencies can be jointly liable for harm caused by third parties, including "criminal or negligent acts" of third parties. *See Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 420. A local agency thus does not have immunity if the specific, alleged facts "squarely" fall within one of the enumerated exceptions[17] and advance a claim of joint—not vicarious or secondary—liability.

---

[16] The *Jones* Court did not address whether the plaintiffs' claims invoked any of the Act's exceptions to immunity under 42 Pa.C.S. § 8542. *Jones*, 700 A.2d at 420 n.4. Our Supreme Court only rejected Philadelphia's argument of absolute immunity for harm caused by "any other person." *Id.*; 42 Pa.C.S. § 8541.

[17] As discussed herein, the parties dispute the scope of the sexual abuse exception, which

11

*Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 419.

Accordingly, per *Crowell*, we examine whether Plaintiffs have alleged "specific facts" that would establish the District's joint negligence despite the presence of additional tortfeasors, *i.e.*, the two minors. *See Crowell*, 613 A.2d at 1183-84 (explaining that the drunk driver could be a joint tortfeasor); *Jones*, 700 A.2d at 419-20 (stating that the police officer could be held jointly liable for negligently pursuing the fleeing driver). To paraphrase *Crowell* and *Jones*, when Plaintiffs are injured and they sued the District, the District may be liable despite the presence of the two additional minor tortfeasors if the District could be jointly negligent with the two minors. *See Crowell*, 613 A.2d at 1184; *Jones*, 700 A.2d at 419.

Here, similar to the *Crowell* and *Jones* plaintiffs, Plaintiffs have alleged that the District and its employees' negligent actions resulted in injury. Like the wrongly placed sign in *Crowell* and the police officer pursuing a fleeing driver in *Jones*, the District or its employees did not directly injure the minor victim. *Cf. Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 419-20. Rather, Plaintiffs alleged that the District is liable even when their injuries were caused by the criminal acts of a third party, *e.g.*, a drunk or fleeing driver, or a minor. *See* 42 Pa.C.S. § 8541; *Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 420. For these reasons, we reject the District's contention that it is absolutely immune for the harm caused by third parties, *i.e.*, the two minor students. *See* Dist.'s Br. at 12.[18]

would appear to implicate the issue of whether the alleged facts "squarely" fall within such exception. We explain below that the alleged facts squarely fall within the sexual abuse exception.

[18] Given the procedural posture and record, we need not address Plaintiffs' characterization of their legal theories in support of their claims. *See* Pls.' Br. at 34; *Steiner v. Markel*, 968 A.2d 1253, 1258 n.11 (Pa. 2009) (noting "a plaintiff is free to proceed on any theory of liability which the facts alleged in his complaint will support" (cleaned up)); *Crowell*, 613 A.2d at 1181 & n.4, 1184 (explaining that under 42 Pa.C.S. § 8541, a municipality may not be liable under a theory of vicarious liability solely because of its governmental status but may be liable under a theory of joint liability because the municipality's actions fall within one of the 42 Pa.C.S. § 8542

**B. Sexual Abuse Exception to Governmental Immunity**

To provide context for the parties' arguments, we reiterate the relevant statutory language. "The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency [(prefatory clause)]: [(a)] Conduct which constitutes an offense enumerated under section 5551(7) (relating to no limitation applicable) [(subclause (a)), and] [(b)] if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence [(subclause (b))]." 42 Pa.C.S. § 8542(b)(9).[19]

**1. Arguments**

The District interprets the sexual abuse exception as requiring that the

exceptions); *Jones*, 700 A.2d at 420 (holding that "a governmental party is not immune from liability when *its* negligence, along with a third[-]party's negligence, causes harm" (emphasis added)).

Unlike the plaintiffs in *Crowell* and *Jones*, Plaintiffs did not sue the third parties, *i.e.*, the two minors, as joint tortfeasors. *See generally* 23 Pa.C.S. §§ 5501-5509 (addressing liability for the tortious acts of minors); *Berman ex rel. Berman v. Phila. Bd. of Educ.*, 456 A.2d 545, 549 (Pa. Super. 1983) (discussing presumptions in resolving the negligence of a minor defendant). The only issue before this Court, however, is the District's immunity. *See* Dist.'s Br. at 17 n.3 (stating that only immunity is at issue and not the "downstream issues when immunity does not apply, such as the scope of the duty to foresee sexual abuse and the remaining elements of negligence, such as causation or injuries"). Thus, we do not address whether such alleged tortfeasors are indispensable parties and whether the factfinder may apportion liability without their presence. *See* 42 Pa.C.S. § 7102(a.2).

[19] For ease of discussion, we refer to the initial 42 Pa.C.S. § 8542(b) as the prefatory clause and demarcate 42 Pa.C.S. § 8542(b)(9) as subclauses (a) and (b). To be precise, upon incorporating the language of 42 Pa.C.S. § 5551(7) into the language of 42 Pa.C.S. § 8542(b)(9): a local agency is liable if the "injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to" "conduct which constitutes an offense enumerated under section 5551(7)," which includes (1) an "offense under any of the following provisions of 18 Pa.C.S. (relating to crimes and offenses), or [(2)] a conspiracy or solicitation to commit an offense under any of the following provisions of 18 Pa.C.S. if the offense results from the conspiracy or solicitation, if the victim was under 18 years of age at the time of the offense: . . . Section 3124.1 (relating to sexual assault)" and "if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." 42 Pa.C.S. §§ 5551(7), 8542 (cleaned up).

District engage in proscribed "conduct." Dist.'s Br. at 15. Specifically, the District contends that Plaintiffs must first allege that a District employee engaged in conduct constituting an offense under 42 Pa.C.S. § 5551(7). *Id.* at 16 (emphasizing subclause (a)). Second, if Plaintiffs satisfy subclause (a), the District argues that Plaintiffs must then allege, under subclause (b), that their injuries were caused by the District's negligent actions or omissions. *Id.* at 17. In other words, the qualifying term "following acts" in the prefatory clause of 42 Pa.C.S. § 8542(b) applies to subclauses (a) and (b) in the sexual abuse exception. *Id.* at 18-21; 42 Pa.C.S. § 8542(b)(9).

Plaintiffs counter with their own interpretation. In their view, subclause (a) contains no limiting language that would require a District employee to engage in the proscribed conduct. Plaintiffs' Br. at 33-34. In Plaintiffs' view, subclause (b)—the conditional "if" clause—limits Plaintiffs' negligence claim to injuries separate from the "sex crime itself." *Id.* at 34. In other words, per Plaintiffs, the District may be negligent for misconduct that enabled the sexual abuse, but not the abuse itself. *Id.* at 17 (asserting that "the potential liability of the local agency turns on the negligence that enabled sexual abuse and not for the sex crime itself"), 23-24, 34-35. Plaintiffs reject the District's interpretation that would require the District or its employee to commit sexual abuse. *Id.* at 26.

### 2. Discussion[20]

In *McCoy*, the defendant, while *inside* a crowded restaurant, fired a gun

---

[20] "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). To determine whether a statute is ambiguous, we must interpret the challenged statutory term "in context with the overall statutory framework in which it appears." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1177 (Pa. 2025) (cleaned up); *King v. Burwell*, 576 U.S. 473, 486 (2015) ("Our duty, after all, is to construe statutes, not isolated provisions." (cleaned up)). If, in the context of the overall statutory framework, the disputed term has "at least two reasonable interpretations, then the term is ambiguous." *Herold*, 329 A.3d at 1177 (cleaned up); *see also Gidor v. Mangus*, 322 A.3d 1290 (Pa. 2024) (*per curiam* order) (granting allocatur on issue of ambiguity). A term may be ambiguous

14

into the kitchen. *McCoy*, 962 A.2d at 1161-62. The trial court convicted the defendant for firing a gun "*from any location into* an occupied structure." *Id.* (cleaned up) (imposing no sentence for this conviction). The trial court interpreted the statute as proscribing firing a gun "both into and from within the occupied structure." *Id.* The Superior Court affirmed on different grounds, reasoning that the clause "from any location" meant the defendant could be inside "the occupied structure when the gun was fired." *Id.* Our Supreme Court held the lower courts erred by failing to interpret the term "from any location *into*" in context with the overall statutory provision. *Id.* at 1166-67 (emphasis added). The lower courts' interpretations were flawed, per *McCoy*, because both interpretations required inserting the term "or from within" into the statute: firing a gun "from any location into, *or from within*, an occupied structure." *Id.* at 1163 (emphasis in original). Our Supreme Court thus pruned the emphasized clause out of the original statutory language: "from any location into an occupied structure." *Id.* at 1167.

But our Supreme Court could not harmonize the statutory phrases "from any location" and "into" "to give full logical effect to both." *Id.* (opining that the parties presented arguments that were not "so weak or implausible that the statute can be called unambiguous in this context"). Per the Court, the "plain meaning of the two phrases reveals a latent ambiguity in the statute; one phrase must be interpreted as modifying or limiting the other," which required applying the rules of statutory construction.[21] *Id.*

_____

on its face or, upon applying the term to "extraneous or collateral facts," the term may be latently ambiguous. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1153 (Pa. 2009); *Commonwealth v. McCoy*, 962 A.2d 1160, 1167 (Pa. 2009); *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982). When the statutory text is "not explicit," *e.g.*, patently or latently ambiguous, then we may invoke the rules of statutory construction. 1 Pa.C.S. § 1921(b)-(c).

[21] Specifically, one construction was whether the term "'into' qualifies the term 'from any location'" such that the defendant can be anywhere, *i.e.*, "from any location," outside the occupied

15

Our Supreme Court applied the rule that we must construe every statute "to give effect to all its provisions," *i.e.*, "read all sections of a statute together and in conjunction with each other, construing them with reference to the entire statute." *Id.* at 1168. An ordinary citizen reading the statute, the Court posited, would understand that the term "into" modified the meaning of "'from any location' to include only any location from which the shooter can physically shoot 'into' the occupied structure." *Id.* Further, the title of the section was "discharge of a firearm into an occupied structure," which further supported a "logical reading" that effectuated all of the statutory language without an absurd result. *Id.* at 1166, 1168. In other words, a defendant who fired a gun from inside the occupied structure could not be convicted of firing a gun "from any location into an occupied structure." *Id.* at 1169 (reversing the conviction).

More recently, in *Herold*, our Supreme Court construed the term "it" in a particular clause. 77 P.S. § 1401(c).[22] The employer argued that "it" referred to "compensable disability or death," which would render the provision as defining "compensable disability or death" to mean only those conditions occurring within the four-year timeframe. *Herold*, 329 A.3d at 1177. In the employer's view, this

_____

structure and firing a gun "into" the structure. *McCoy*, 962 A.2d at 1168. The alternative construction was whether the term "into" qualified the term "occupied structure" such that the defendant can be anywhere, *i.e.*, "from any location," outside *or* inside the occupied structure, as long as the defendant fired a gun "into" any part of the occupied structure, such as the kitchen. *Id.* at 1167-68.

[22] "Wherever compensable disability or death is mentioned as a cause for compensation under this act, *it* shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry." 77 P.S. § 1401(c) (emphasis added). The Workers' Compensation Act (WC Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, provides section numbers that "are distinct from, but correspond to, the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold*, 329 A.3d at 1166 n.1. "For clarity, we will refer to provisions of the [WC Act] only by their Purdon's citation." *Id.*

16

interpretation was grammatically and logically sound because replacing "it" with "the act" resulted "in a stilted and unnatural sentence." *Id.* The employee countered that "it" referred to "this act" (the immediately preceding noun), meaning the preceding noun defined the scope of The Pennsylvania Occupational Disease Act,[23] *see* 77 P.S. § 1204. *Id.* at 1174. Per the employee, using the singular pronoun "it" for the plural phrase "compensable disability or death" violated grammatical rules and the employer's interpretation was unnecessarily redundant. *Id.*[24] Our Supreme Court held that both parties presented reasonable grammatical arguments for their interpretations, but each had drawbacks. *Id.* at 1178.[25]

The *Herold* parties also disputed the ambiguity of the phrase "for any disability or death" in another statutory clause. 77 P.S. § 1403.[26] The employer argued that the clause barred all claims regardless of the four-year timeframe. *Herold*, 329 A.3d at 1180 (arguing that "even if an injured employee's disability or

---

[23] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201-1603.

[24] Per the employer, "Wherever *compensable disability or death* is mentioned as a cause for compensation under *this act*, *compensable disability or death* shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry." *Herold*, 329 A.3d at 1172. Per the employee, "Wherever *compensable disability or death* is mentioned as a cause for compensation under *this act*, *this act* shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of his last employment in such occupation or industry." *Id.* at 1174 (cleaned up and emphasis added).

[25] Specifically, the employer's interpretation contained "multiple unnecessary redundancies, and [the employee's] interpretation leads to somewhat stilted phrasing, as in 'this act shall mean,' which could be accomplished more directly. In short, we find the statutory language to be ambiguous." *Herold*, 329 A.3d at 1178. Nevertheless, the *Herold* Court concluded that regardless of which interpretation it adopted, the ultimate effect was the same: 77 P.S. § 1401(c) temporally limited the term "compensable disability or death." *Id.*

[26] "Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages *for any disability or death* resulting from occupational disease, or to any method of determination thereof, other than as provided in article three of this act." 77 P.S. § 1403 (emphasis added).

17

death occurs outside of [the] four-year limitations period, the injured employee could not receive compensation"). The employee countered by focusing on the language that surrendered his "rights to any form or amount of compensation." *Id.* (cleaned up). The surrender of his rights, the employee reasoned, was meaningful only if compensation was actually available within the scope of the statute. *Id.* Because his injury occurred outside of the four-year timeframe, the employee argued that 77 P.S. § 1403 permitted him to pursue a claim for damages *outside* the scope of the statute. *Id.* Our Supreme Court agreed that both the employer's and the employee's statutory interpretations were reasonable and thus invoked the rules of statutory construction. *Id.*[27]

Instantly, like the *McCoy* and *Herold* Courts, we agree that the District and Plaintiffs have each presented reasonable interpretations of the sexual abuse exception. *Cf. McCoy*, 962 A.2d at 1163 (discussing the latent ambiguity of the clause "from any location into an occupied structure"); *Herold*, 329 A.3d at 1178-80 (holding that the parties' presented reasonable grammatical arguments construing the term "it" and the latent ambiguity in the term "for any disability or death").

The District construes the prefatory and sexual abuse clauses together

---

[27] Specifically, the "broad interpretation advanced by the [employer], based upon the statutory language applying the exclusivity provision to 'any disability or death,' is reasonable." *Herold*, 329 A.3d at 1180. The employee's interpretation, "focusing on the provision's language regarding the forfeiting of the right to compensation outside of the workers' compensation system, and carving out an exception to exclusivity where there is no compensation available within the system, is reasonable as well." *Id.* Our Supreme Court did not elaborate.

The Court then examined the purpose underlying workers' compensation, in which injured employees received "certain, but reduced, benefits" in exchange for waiving their right to sue "employers for job-related injuries." *Id.* at 1182. This purpose, the *Herold* Court reasoned, would be undermined if employees had *no* right to sue employers and seek compensation for injuries occurring outside of the four-year window. *Id.* In other words, "claims by an injured worker related to disability or death resulting from an occupational disease and which occur outside of the four-year period are not barred by the exclusivity provision, and such an employee may seek compensation against his employer in a common law civil action." *Id.* at 1192 (footnote omitted).

18

as follows: *the following acts* by (1) a local agency *or* (2) any of its employees may result in the imposition of liability on a local agency: (a) conduct, *i.e.*, acts by a local agency *or* its employees, which constitutes sexual abuse (b) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence. *See* 42 Pa.C.S. § 8542(b)(9). Per the District, the clause "*following acts*" is a conditional clause that applies to the term "conduct."

Plaintiffs, similar to the employee in *Herold* who also focused on a conditional clause, disagree. In their view, *the following acts* by a (1) local agency *or* (2) any of its employees may result in the imposition of liability on a local agency: (a) conduct, *i.e.*, acts by a third party (not acts by a local agency *or* its employees), which constitutes sexual abuse (b) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence. *See* 42 Pa.C.S. § 8542(b)(9). Anyone could commit the "conduct" of sexual abuse, per Plaintiffs, but the local agency is liable only if its negligence caused Plaintiffs' injuries. *See L.S. Hanover Area Sch. Dist.* (M.D. Pa., No. 3:22-cv-234, filed May 23, 2024) (*Hanover*), 2024 WL 2393038, at *13 (reasoning that the sexual abuse exception "contemplates that 'conduct' constituting a sex offense against a minor can be separate from the negligence of the local agency").[28]

Both are reasonable, albeit imperfect interpretations. *Cf. Herold*, 329

---

[28] Although neither party discussed *Hanover*, we may rely on persuasive federal district court decisions. *In re Gun Range, LLC*, 311 A.3d 1242, 1248 n.8 (Pa. Cmwlth. 2024), *cert. denied*, 145 S. Ct. 1174 (2025). The *Hanover* Court emphasized the legislature's use of the term "omissions." *Hanover*, 2024 WL 2393038, at *13. "A local agency employee cannot directly engage in conduct constituting a sex offense against a minor through an omission." *Id.* However, "a local agency employee can cause injury to a minor plaintiff through an omission where it fails to act in response to conduct constituting a sex offense." *Id.* Thus, per *Hanover*, a plaintiff must plead and prove and that the "the local agency's alleged acts or omissions were the proximate cause of the sexual assault." *Id.* As the District points out, the only issue before this Court is immunity and not "downstream issues when immunity does not apply, such as . . . causation." Dist.'s Br. at 17 n.3.

19

A.3d at 1178-80. The District's interpretation is reasonable because governmental immunity statutes are strictly construed to limit exceptions to immunity. Under its strict construction, the District loses immunity only when a District employee commits sexual abuse. But because a District—a local agency—cannot commit sexual abuse, the District's interpretation of "conduct" is flawed. *Cf. McCoy*, 962 A.2d at 1167 (emphasizing that the "plain meaning of the two phrases reveals a latent ambiguity in the statute"); *cf. also Hanover*, 2024 WL 2393038, *13. The District's interpretation is also flawed because it does not acknowledge that a local agency's *failure* to act could have enabled sexual abuse. *Cf., e.g., Crowell*, 613 A.2d at 1183-84 (holding that a municipality could be jointly liable when the municipality was negligent in placing a traffic sign that misdirected a drunk driver into the plaintiff's vehicle); *Jones*, 700 A.2d at 419 (deciding that a jury must resolve whether the municipality negligently maintained the police car and whether the municipality could be jointly liable with the fleeing driver for the plaintiff's injuries).

In turn, Plaintiffs' interpretation is reasonable because it creates a direct causal connection between the District's alleged negligence and Plaintiffs' injuries, regardless of who committed the sexual abuse. *Cf. also Hanover*, 2024 WL 2393038, *13. Plaintiffs' interpretation reflects the principle that a municipality may be liable for negligence that enabled harm by third parties. *Cf., e.g., Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 419; *cf. also Hanover*, 2024 WL 2393038, *13. Such an interpretation is also reasonable given that the District is acting *in loco parentis* when the victim was assaulted. Plaintiffs' interpretation is also flawed, however, by not sufficiently acknowledging the plain language of the prefatory clause, *i.e.*, "the *following acts* by a local agency or any of its employees." 42 Pa.C.S. § 8542(b) (emphasis added); *cf. McCoy*, 962 A.2d at 1167.

20

## C. Legislative Intent of the Sexual Abuse Exception

Because both interpretations are reasonable, albeit somewhat flawed, we invoke the rules of statutory construction, which include a consideration of the "consequences of a particular interpretation," and legislative history. *See* 1 Pa.C.S. § 1921(c); *Herold*, 329 A.3d at 1180.[29]

As for the former, the District begins with the premise that the fundamental purpose of the Act is to shield the public fisc. Dist.'s Br. at 30. The District reminds us of its budgetary constraints, self-insured status, and inability to raise its own taxes in financing the education of 200,000 students. *Id.* at 30-31. The District complains that the legislature removed the $500,000 statutory cap for sexual abuse claims and extended the statute of limitations for almost 40 years after the victim turns 18 years old. *Id.* at 31. Preventing "unusually large recoveries in tort cases," the District maintains, was an important public interest of the Act. *Id.* at 34.

Plaintiffs counter that the legislature weighed all of these public policy considerations prior to enacting the sexual abuse exception. Pls.' Br. at 37. The District's financial arguments, Plaintiffs emphasize, are "properly directed to the legislature" and not this Court. *Id.* Plaintiffs also note there is no guarantee that they will succeed on their case: they must plead and prove negligence. *Id.* at 38.

As for legislative history, District recaps the history behind the Act as a whole, which in the District's view, immunized agencies from tort damages unless an agency employee was negligent. Dist.'s Br. at 10, 22-23. The District maintains that nothing in the history suggested that the legislature intended to waive the District's "immunity for the acts of third parties." *Id.* at 22-25 (analogizing to *Burns*

---

[29] Section 1921(c)(6) provides that "when the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering," *inter alia*, the "consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(6).

21

*v. Blair Cnty.*, 112 A.3d 690 (Pa. Cmwlth. 2015), and *City of Phila. v. Buck*, 587 A.2d 875 (Pa. Cmwlth. 1991)). The District also relies on statements by Representative Mark Rozzi, the lead legislative sponsor of the sexual abuse exception, who identified several sexual abuse scandals that prompted the legislation. *Id.* at 26. The District construes those scandals as having two elements in common: (1) the agency employee—and not a third party—committed the sexual abuse; and (2) the agency concealed the sexual abuse. *Id.* at 26-27.

Plaintiffs reject the District's interpretation of Representative Rozzi's statements. Pls.' Br. at 35-36. In Plaintiffs' view, Representative Rozzi "unambiguously explained" that the sexual abuse exception was intended to provide "for absolute parity in the handling of sexual abuse claims between public and private institutions." *Id.* at 36 (quoting H. Journal, 4/10/19, at 510); *accord Amicus* Br. of Rep. Mark Rozzi, at 3-4, 8 (citation omitted).[30]

Representative Rozzi similarly argues that the sexual abuse exception was intended to (1) hold public institutions accountable for enabling "abusers to commit their crimes against" children, and (2) expand a plaintiff's "right to sue" to include such public institutions. *Amicus* Br. of Rep. Mark Rozzi, at 8-9 (cleaned up). To achieve this goal, Representative Rozzi explains the deliberate use of the language "actions or omissions" in the sexual abuse exception to ensure that public institutions could be held negligent for facilitating sexual abuse. *Id.* at 9-10 (rejecting the District's focus "on the employment status of the abuser, when instead this *amicus curiae* intended the focus to be on the" agency's actions or omissions). Representative Rozzi reiterates that the goal of the sexual abuse exception "was not

---

[30] "It will also waive sovereign immunity for public entities guilty of covering up childhood sexual abuse. [House Bill] 962 provides for absolute parity in the handling of sexual abuse claims between public and private institutions." H. Journal, 4/10/19, at 510.

to hold institutions accountable for employing abusers, but for enabling abusers to commit their crimes against innocent children." *Id.* at 10 (cleaned up).

In ascertaining legislative intent, we presume the legislature did not intend an absurd result and intended to favor protecting the public fisc. 1 Pa.C.S. § 1922(1), (5); *Lehigh Valley Co-op. Farmers v. Bureau of Emp. Sec., Dep't of Lab. & Indus.*, 447 A.2d 948, 950 (Pa. 1982) (*Lehigh*). We also consider "the practical results of a particular interpretation." *Lehigh*, 447 A.2d at 950. In considering the practical results, we recognize that the legislature decides public policy. *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).

Instantly, even accepting as true the District's assertions regarding the consequences of Plaintiffs' interpretation, the legislature decides public policy. *See id.* We must presume the legislature also recognized its duty of protecting the public fisc, including the potential monetary harm to municipalities from large tort recoveries. *See id.*; 1 Pa.C.S. § 1921(c)(6) (noting we may consider the consequences of a particular statutory interpretation in divining the legislature's intent). Upon balancing those duties, the legislature nevertheless enacted an exception to governmental immunity, removed the damages cap, and extended the statute of limitations. We cannot reweigh those considerations. *See Weaver*, 975 A.2d at 563; *see generally Zauflik*, 104 A.3d at 1120-21.

As for the parties' competing interpretations of legislative history, we favor Plaintiffs' interpretation, which relies on the floor statements of Representative Rozzi, the main legislative sponsor. *See, e.g.*, H. Journal, 4/10/19, at 510. As the lead sponsor, he asserted that the intent of the legislation was to hold municipalities— like the District—accountable for negligently *enabling* sexual abuse. *Amicus* Br. of Rep. Mark Rozzi, at 9-10. The ability to hold the District liable, of course, does not

23

mean that Plaintiffs presumptively prevail or that the District cannot successfully interpose some downstream defense. *See* Dist.'s Br. at 17 n.3. Further, we reject the District's reliance on *Burns* and *Buck*, as neither case addressed the sexual abuse exception. *See Burns*, 112 A.3d at 700 (construing the real property immunity exception); *Buck*, 587 A.2d at 878-89 (same).[31] For these reasons, even after considering the consequences of the parties' competing interpretations, we respectfully reject the District's concerns about the consequences of Plaintiffs' statutory interpretation. *See* 1 Pa.C.S. § 1921(c)(6).

## IV. CONCLUSION

For these reasons we affirm the trial court's order overruling the preliminary objections filed by the District. We dismiss the District's February 27, 2024 request to take judicial notice of related appeal as moot. We remand for further proceedings.

**LORI A. DUMAS, Judge**

Judge Fizzano Cannon did not participate in this decision.

---

[31] Also, our Supreme Court refined *Buck*'s broad analysis. *See Crowell*, 613 A.2d at 1183-84; *Jones*, 700 A.2d at 419-20.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.F.V., a minor, by her legal guardians :
Kimberly Varano and Joseph Varano, :
and Kimberly Varano and Joseph :
Varano in their own right :
: No. 218 C.D. 2023
v. :
:
South Philadelphia High School :
and Philadelphia School District, :
Appellants :

# **O R D E R**

AND NOW, this 9th day of June, 2025, we AFFIRM the order entered by the Court of Common Pleas of Philadelphia County, which overruled the preliminary objections filed by the Philadelphia School District (District). We DISMISS the District's February 27, 2024 request to take judicial notice of related appeal as moot. We REMAND the case for further proceedings.

Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**